Charles **POTTER**, d/b/a Potter's Building Supplies, Appellant,

v.

Pearl **GARNER**, Appellee.

No. 217.

Court of Civil Appeals of Texas.

Tyler.

Oct. 13, 1966.

Rehearing Denied Nov. 3, 1966.

538

Gordon Wellborn and Rex Houston, Henderson, Malcolm M. Guinn, Rusk, for appellant.

James H. Rounsaville, Norman, Rounsaville, Hassell & Spiers, Jacksonville, W. Wilson McVicker, Rusk, for appellee.

MOORE, Justice.

This is an appeal from a judgment awarding damages for personal injuries. Appellee, Pearl Garner, was an employee of appellant, Charles Potter, d/b/a Potter's Building Supplies, who was engaged in the construction business. Appellant was an employer subject to the workmen's compensation, but did not carry workmen's compensation insurance. Therefore, the defenses of contributory negligence and assumed risk are not available to appellant. Article 8306, Secs. 1 and 4, Vernon's Ann. Civ.St.

In his pleadings appellee Garner alleged, among other things, that his employer was negligent in furnishing him an electrically powered handsaw which was not equipped with a protective guard and that as a direct and proximate result of such negligence, he suffered severe injuries to his left hand.

Appellant answered with a general denial and specially denied that he furnished appellee with the power saw in question and alternatively that the saw was not defective. Pleading affirmatively, appellant alleged that the appellee was experienced in the use of a power saw and fully realized and appreciated the danger involved in the use thereof and thereafter voluntarily exposed himself to such danger and assumed risk. He further alleged that appellee's injuries resulted solely from his own negligence in the following respects: (1) failure to keep a proper lookout; (2) using the saw to split a board when he fully realized and appreciated the danger; (3) failing to act in a careful and prudent manner in using the saw; and (4) voluntarily exposing himself to a danger which he knew to exist. Pleading further in the alternative, appellant alleged that even though the power saw may have been defective in some respects, the danger was not known or discernible to him and as a result the event was a new and independent cause of the injuries, thus destroying any causal connection between the act complained of by the appellee; that appellee had the last clear chance of preventing injuries to himself and his failure to use ordinary care was the sole proximate cause of his injuries, and lastly that the occurrence in question was the result of an unavoidable accident.

The dispute turns upon the fact question of whether or not appellant actually furnished the saw and if so, whether the saw was equipped with a protective guard covering the saw blade. The injury was not disputed, nor does appellant challenge the amount of damages awarded by the jury.

The record shows that appellee was a carpenter and had been in the employment of the appellant on several occasions previous to the time of his injuries. On the occasion in question, appellant Potter was engaged in remodeling a dwelling house and had assigned the appellee the duty of laying a hardwood floor in one of the rooms in the building. In performing the work, appellee testified that his employer furnished him and the other employees with a power saw. This particular saw was known and referred to by its brand name or a "Skill" saw, which was equipped with a protective guard over the blade. Several days before his injury, appellee testified that the blade on the "Skill" saw had been severely damaged and had been taken to a repair shop for repairs. Approximately two days before the date of his injury, he testified that while in his employer's place of business in Jacksonville for the purpose of obtaining supplies for the construction, he advised his employer that the Skill saw had been damaged and that they were in need of another power saw on the job. According to his testimony, appellant then went into the back of his shop and brought out a power saw known as a "Mall" saw, which was not equipped with a protective guard over the blade. He then placed the saw in a box in which he was using to carry some nails and advised him to take the same to the job and use it. It is without dispute that the "Mall" saw in question was an electrically powered saw equipped with a radial blade and was designed to be used as a portable handsaw. According to appellee's testimony, it was not equipped with the usual type of a protective guard over the blade which would automatically cover the blade after use, nor to his knowledge had it ever been so equipped when he had used it on previous jobs. He testified that he was uncertain as to whether the "Skill" saw had been repaired and returned to the job at the time of his injury, but if so, that he made no effort to locate same before using the Mall saw. He also testified that he knew and appreciated the danger involved in attempting to rip a narrow piece of oak flooring by using the saw without a protective guard. At the time of his injury, he testified that he was in the process of ripping the oak flooring approximately 18 inches in length by holding the same down flat on a sawhorse with his left hand and using the power saw in his right hand. After he had sawed into the board several inches, the

saw either hit a hard place or knot or became pinched, thus causing it to suddenly jump up out of the crevice and lurch backward across his left hand near the thumb and across his left wrist, severely injuring his left hand and wrist. According to the medical testimony, there was severe damage to the nerves, ligaments, tendons and bones in his left hand and wrist requiring a surgical operation and in order to join the severed nerves and ligaments, it became necessary to shorten the length of the bones in the forearm. This was done by surgical operation whereby the bones in the forearm were severed and a short piece of the bones were taken out which resulted in a shortening of the arm.

Appellant denied that he furnished the saw to the appellee or that he told him to us the same. According to his testimony, the saw was not owned by him and had never been owned by him, but was the property of his brother-in-law, Henry Fowler, who had worked for him on numerous jobs in the past. He testified that immediately after the injury, he went to the job and made an investigation and found the "Mall" saw to be equipped with a protective guard over the blade; that he had seen the saw on numerous occasions on other jobs and that to his knowledge the saw had always been equipped with a protective guard. He admitted that he knew that Fowler had made a practice of using the saw on previous jobs in which Fowler had been employed by him, and also knew that the saw was being used on the job on the occasion in question.

Mr. Fowler testified that the "Mall" saw was owned by him and that he had used it on numerous other jobs where he had worked for the appellant. He and the other witness maintained, however, that the saw had always been equipped with a protective guard over the blade.

The case was tried before a jury and in response to the Special Issues as numbered in the court's charge, the jury made the following findings: (1) that the Mall electric saw used by Pearl Garner at the time and on the occasion in question did not have a protective guard; (2) that appellant, at the time and on the occasion in question knew, or in the exercise of ordinary care should have known, that the Mall electric saw did not have a protective guard; (2a) that appellant permitted the Mall electric saw to be used by appellee at the time and on the occasion in question; (3) that such permitting was negligence; (4) that such negligence was a proximate cause of the injuries; (5) that appellant furnished the Mall electric saw to Pearl Garner for his use on the occasion in question; (6) that the act of appellant in furnishing the Mall electric saw to Pearl Garner for use without a protective guard was negligence; (7) that such actions were a proximate cause of the injuries; (8) that prior to the injuries to appellee, appellant instructed appellee to use the Mall electric saw; (9) that the giving of such instructions was negligence; (10) that such negligence was a proximate cause of the injuries; (11) that prior to the occasion in question appellant failed to make such an inspection of the Mall electric saw as a person of ordinary prudence in the exercise of ordinary care would have made under the same or similar circumstances; (12) that the failure to make such inspection was a proximate cause of the injuries; (13) that the failure of appellant to furnish an electric table saw at the job site was not negligence; (15) that appellee suffered damages in the amount of $21,000.00; (16) that past medical bills amounted to $565.00; (17) that past hospital services amounted to $249.00; (18) that appellee's injuries were not the result of an unavoidable accident; (19) that appellee did not cause the saw to be placed in a pinched condition by holding the flooring with the left hand while sawing with the right hand; (23) that a danger inherent in the work was not a proximate cause of appellee's injuries; (25) that appellee failed to keep a proper lookout for his own safety; (26) that such failure, however, was not a proximate cause of his injuries; (28) that at the time and on the oc-

casion in question appellee attempted to split an unsecured piece of hardwood flooring with a power saw; (29) that in so doing he knew and realized the danger of his acts; (30) that he knew and realized the dangerous condition prevailing at the time and on the occasion in question; (31) that appellee exposed himself to said danger; (32) that such conduct on the part of the appellee was not, however, the sole cause of the injuries; (33) that appellee knew or realized the condition of the power saw while he was using it; (34) that he had the last opportunity to prevent exposing himself to such condition; (35) that appellee failed to avail himself of such opportunity; (36) that such failure, however, was not the sole cause of the appellee's injuries.

The trial court entered judgment for appellee on the jury verdict and appellant has duly perfected this appeal.

Appellant has assigned 25 Points of Error, the majority of which assert that either there was no evidence to support the jury's verdict or that the evidence was so against the great weight and preponderance of the evidence as to be manifestly wrong and unjust. Because of these assignments we have reviewed the entire record and have done so in the light of the rules as set forth in the case of In re: King's Estate, 150 Tex. 662, 244 S.W.2d 660 (S.Ct.).

■ In approaching the question of whether or not there is any evidence of probative force to support the verdict, we are required to review the evidence in a light most favorable to the verdict and to disregard that which is favorable to appellant. Barker v. Coastal Builders, 153 Tex. 540, 271 S.W.2d 798, 799; Tips v. Gonzalez (Tex.Civ.App.) 362 S.W.2d 422.

■ A review of the testimony, we think, adequately demonstrates that there was sufficient evidence of probative force to raise each of the fact issues presented to the jury by the Special Issues, especially when viewed in a light most favorable to

the verdict, and therefore each of the no evidence points must be overruled.

■■ In passing upon the question of the sufficiency of the evidence, we have attempted to weigh and evaluate all of the evidence, both that which is favorable and that which is unfavorable to the verdict. We have concluded that the verdict of the jury and the judgment based thereon is not so against the great weight and preponderance of the evidence that the judgment can be said to be clearly wrong and unjust.

By other Points of Error, appellant seems to take the position that the doctrine of volenti non fit injuria, or the no duty doctrine, has some application to the facts of this case. We find ourselves unable to agree with this contention.

■ It seems to be now settled that the "no duty" concept does not apply to the master-servant relationship. To extend the "no duty" concept to cases of this type would serve to defeat and nullify the obvious and clearly expressed intention of the Legislature to take away from the nonsubscribing employer the defenses of contributory negligence and assumed risk. Sears, Roebuck & Company v. Robinson, 154 Tex. 336, 280 S.W.2d 238 (S.Ct.).

■ In order for appellee to recover for his injuries, it was necessary for him to allege and prove negligence on the part of his employer proximately causing the injuries. The only defenses available to the appellant were to show that he was not guilty of negligence proximately causing the injury or that the appellee himself was guilty of some act which was the sole proximate cause of the injuries. Sears, Roebuck & Company v. Robinson, supra.

Several Special Issues were submitted inquiring whether or not the act and conduct of the appellee was the sole proximate cause of his injury. The burden of the proof upon these issues rested with the appellant. Ae we view the verdict of the

jury, appellant failed to obtain a finding showing the conduct of the appellee to be the sole proximate cause of his injuries.

Appellant argues, however, that the jury's findings to Special Issues Nos. 33, 34 and 35 wherein the jury found that appellee realized the condition of the saw and had the last opportunity to prevent exposing himself to such condition and failed to avail himself of the opportunity are tantamount to a finding that the acts and conduct of the appellee was the sole proximate cause of his injuries. We are unable to agree with this contention. Even though such findings could be construed as a finding of either contributory negligence or assumption of the risk, the jury nevertheless found that such conduct on the part of the appellee was not the sole proximate cause of his injuries. In order to exonerate himself from liability because of his own negligent conduct, appellant was required to obtain a jury finding showing that appellee's own negligent conduct was the sole cause of his injury.

Nor do we agree with the appellant's contention that the record establishes as a matter of law that appellee's injuries were the result of a new and independent cause. In this connection appellant argues that since the undisputed facts show that the saw struck a hard place in the lumber, causing it to bind, such was sufficient to break the chain of events between the appellant's negligence and the injury, and that this fact, together with appellee's use of the saw, was such a combination of circumstances that injury could not have been reasonably foreseen.

■ The term "new and independent cause" was defined by the court in connection with the definition of proximate cause. The entire question of causation was thus placed before the jury and was determined adversely to the appellant. As we view the evidence, the facts and circumstances surrounding the question of causation present nothing more than a fact question and therefore we are not in

a position to hold that the injuries were the result of a new and independent cause as a matter of law.

Appellant next contends that since the appellee filed no motion to set aside any of the jury's findings and since the judgment is obviously based upon the entire verdict of the jury, that when all of the jury findings are taken as a whole, without any of the same being set aside, there is an irreconcilable conflict in the issues. In this connection appellant takes the position that the findings of the jury establishing liability on the part of the appellant in Issues Nos. 1 through 12 are in conflict with the defensive Issues Nos. 25, 28, 29, 30, 31, 33, 34 and 35. As we view the record, however, no conflict is presented.

■ Before a judgment based on a verdict containing conflicting answers will be set aside, it must be shown that the conflict between the answers is such that one answer would establish a cause of action or defense, while the other would destroy it. Pearson v. Doherty, 143 Tex. 64, 183 S.W.2d 453, 456 (S.Ct.); Little Rock Furniture Mfg. Co. v. Dunn, 148 Tex. 197, 222 S.W.2d 985 (S.Ct.).

■ The test in such a case is, whether taking the finding alone in the one instance, a judgment should be entered in favor of the plaintiff; and taking it alone in the other, judgment should be entered in favor of the defendant. Howard v. Howard, (Tex.Civ.App.) 102 S.W.2d 473, 475, writ ref.

■ In applying this test the court must consider each of the answers claimed to be in conflict, disregarding the alleged conflicting answer but taking into consideration all the rest of the verdict, and if so considered, one of the answers would require a judgment in favor of the plaintiff and the other would require a judgment in favor of the defendant, then the answers are fatally in conflict. When these rules are applied to the verdict before us, it be-

comes obvious that appellant cannot meet the test because the jury refused to find in his favor on any of the issues involving the question of sole proximate cause.

Other points in appellant's brief complain of the action of the trial court in overruling its exceptions to the charge, rulings on the evidence and the refusal to grant his motion in limine. After having carefully considered each of these points, we are of the opinion that the points are without merit and therefore must be overruled.

The judgment of the trial court is affirmed.