Susan **PRUTER**, Appellant,

v.

Nancy L. **HOPSON**, Appellee.

No. 09–84–366 CV.

Court of Appeals of Texas,
Beaumont.

March 19, 1986.

On Motion for Rehearing May 8, 1986.

Rehearing Denied May 8, 1986.

John Cash Smith, Orange, for appellant.

Richard Clarkson, Law Offices of Gilbert T. Adams, Beaumont, for appellee.

OPINION

BROOKSHIRE, Justice.

Suit for personal injuries and damages arising from an automobile collision, coupled with a count or allegation to recover an award for the loss of the use of appellee's automobile.

The case was submitted on some of the usual grounds of negligence, the jury finding that the appellant was negligent in failing to keep proper lookout, in failing to timely apply her brakes, and following too closely. Each finding of negligence was found to have been a proximate cause of the occurrence. The jury did not find any act of negligence against Hopson. The jury found damages in favor of Hopson for doctor and hospital bills in the past as well as in the future. Award was made for physical pain and mental anguish suffered by Hopson in the past and in the future. These elements of damages are not challenged.

The jury also awarded the appellee $20,-000 for the loss of her earnings in the past which is not challenged.

It is only the award of damages for the loss of earning capacity in the future in the amount of $25,000 dollars and the damages for the loss of the use of the appellee's personal automobile in the sum of $1,200 dollars that are attacked in this appeal. Pruter argues that there is no evidence or insufficient evidence to support the $25,000 dollars awarded for the loss of earning capacity in the future. Pruter also argues that the $25,000 dollars is excessive and is the result of passion or prejudice. Appellant contends that there is no evidence or,

in the alternative, insufficient evidence to support the award of $1,200 dollars for the loss of use of the automobile.

The record is an interesting one. In several aspects it is unusual and different.

Nancy Hopson was 30 years old. She resides in Burkeville. She had been married for six years. She had no children. She was a worker of unusual competency. She certainly had above the average ambition. She testified she liked construction work and she liked working as a laborer in the concrete crew. She started working construction with a broom, cleaning up. She worked in ditches with shovels. Her brothers and her father were in construction work. She desired to follow in their footsteps. She was the youngest in the family and the only girl. She especially wanted to do concrete work, following her dad's career. She stated that she wanted to be just as good as the other members of her family. She started construction and labor work in about 1977. She related an experience where she, along with a gang of men, had been able to pour more concrete than that poured by a very large and expensive machine.

She was a member of Labor Local 207 located in DeRidder, Louisiana. She had successfully completed an apprentice program through her local. She had done excellent work in the training program. She had learned to operate various types of machinery. She had obtained knowledge and information about construction work. She knew how to actually handle competently and efficiently a 90-pound jack hammer as well as chipping hammers. She admitted it was strenuous, hard work but she liked it and had chosen it for her occupation. In fact, she characterized operating one of these 90-pound jack hammers as resulting in the following: "... In fact, it jars your fillings—if you have fillings in your teeth, I've lost fillings from using it and I've had to have my teeth refilled." She stated that she was fully qualified to do all types of concrete work. She was also experienced in general labor construction work. She had also worked as a car-

penter's helper in a successful manner. A Louisiana Laborer's-Associated General Contractor Training Fund certificate is in evidence. It certifies that Nancy Hopson had diligently and with merit completed several courses. The courses named are pipe laying, mason tending, carpenter's helper, cement breaking, cement placing and vibrating.

Evidence of probative force exists in the record which demonstrates that injuries received by Hopson resulting from the collision have prevented her from working. She has a popping or cracking sound in her neck. She has symptoms and disabilities. She had them at the time of trial. She did not have them before the rear-end collision. Hopson states unequivocally that she cannot do the work of construction laborer or concrete worker. She has tried but is not able to do so. We readily recognize that she is an interested party but her credibility is to be weighed and determined by the jury.

One of her ambitions was to become a superintendent of cement work and construction work. In this, she desired to be like her brothers. An exhibit is in evidence stating that Hopson had worked in a cement crew from the ground floor to the seventh floor of a construction job at Fort Polk, Louisiana. She was the first woman who had actually worked a crew of men in this type of work successfully. The exhibit further states that Nancy Hopson acted as a concrete foreman over a crew of from 20 to 30 men and that she was very ambitious, dependable, and honest.

This statement of facts, taken as a whole, is an unusual one. The record points out that the appellee made approximately $14,000 dollars plus in 1977; approximately $12,000 to $13,000 dollars in 1978; approximately $14,455 in 1979, and approximately $14,574 in 1980. The record also demonstrates that she was going to work in Midland, shortly after the date of the accident. She was going to work there with certain other members of her family. There was another excellent job prospect in Galveston, where her rate of pay would

have been $11.38 an hour. Of course, there was other evidence in this fully developed record.

Her version was that, prior to the accident, she was in good health. She had no problems or symptoms concerning neck pains, shoulder pains, headaches or dizziness. She was able to perform all of her many duties and job tasks while working for an extended period of time at Fort Polk.

The medical evidence demonstrated that she reached her maximum recovery in 1983. She had soft tissue injuries. She had suffered injuries to her ligaments and tendons. She sustained a marked limitation in the motion of her neck. She had various other complaints. By prognosis, some of her injuries to the ligaments in her neck would probably get worse. Arthritis, stiffness and scarring of soft tissues, as well as fibricitis, would make matters worse after trial. Nancy Hopson cannot lift or twist. We immediately realized that this testimony was elicited from witnesses that were put on the stand by Hopson. But, under settled Texas law, the credibility of these witnesses and the weight to be given their testimony were for the jury. That's why the jury was there. It was their duty as well as their prerogative to decide the facts. The appellee had a life expectancy of approximately 49 years.

Excellent briefs have helped us. We have applied the appropriate and governing standards of appellate review in appeals of this type. Assiduously, we have followed *Garza v. Alviar*, 395 S.W.2d 821 (Tex. 1965); *In re King's Estate*, 150 Tex. 662, 244 S.W.2d 660 (1951); *Potter v. Garner*, 407 S.W.2d 537 (Tex.Civ.App.—Tyler 1966, writ ref'd n.r.e.); Calvert *"No Evidence" and "Insufficient Evidence" Points of Error*, 38 TEXAS L.REV. 361 (1960); Garwood *The Question of Insufficient Evidence on Appeal*, 30 TEXAS L.REV. 803 (1952).

■ We ultimately decide that there was ample and strong testimony and evidence of probative force to fully sustain the $25,-000 dollars awarded for loss of earning capacity in the future. We decide that it is not excessive. We hold that this award is not the result of passion or prejudice. Following the time-honored, tested guidelines and standards, we sanguinely hold that these elements of damages were issues for the jury and that the jury, in view of the record before them, acted well within their duties and prerogatives. Following Texas constitutional law and precedent, we, therefore, overrule appellant's points of error numbers one through six.

■ The appellee has contended in his Crosspoint One that there was not sufficient cause for taking this appeal and that the appellant should be penalized as provided for by *TEX.R.CIV. P. 438*. Rule 438 states in part:

"Where the court shall find that an appeal or writ of error has been taken for delay and that there was no sufficient cause for taking such appeal, then the appellant, if he be the defendant in the court below, shall pay ten per cent on the amount in dispute as damages...."

In *Page v. Cotton Const. Co.* 617 S.W.2d 723, 725 (Tex.Civ.App.—Houston [14th Dist.] 1981, no writ), the court wrote:

"Appellee, by cross-point, prays for damages pursuant to Tex.R.Civ.P. 438, providing for the assessment of a 10% penalty against appellant should this court find that the appeal has been taken for delay and without sufficient cause. In view of the state of the record this case is well within the 'no sufficient cause' requirement. We are willing to say that this case also meets the 'delay' requirement of Rule 438. However, if Rule 438 does not require us to assess damages for delay, we have discretion under Tex.R.Civ.P. 435 to assess damages when 'the only questions raised on an unsuccessful appeal are well settled and the appellee's circumstances are such that statutory interest on the judgment is not adequate compensation for delay.' *Charter Oak Fire Insurance Company v. Adams*, 488 S.W.2d 548, 551 (Tex.Civ.App.—Dallas 1972, writ ref'd n.r.e.). We find that 10% of the amount

of the judgment is adequate for this purpose."

In the case sub judice, there was no appeal on the liability issues. There was no appeal concerning the majority of the damage issues and the jury's findings. This appeal challenged only the sufficiency of the evidence to support two elements of the damage issues.

*Rule 438* contains mandatory language to the effect that, in general, if there was no sufficient cause for taking the appeal, the defendant in the court below *"shall pay ten per cent on the amount in dispute as damages...."*

We have carefully reviewed the entire record. We have analyzed in detail the statement of facts. We decide that *TEX.R. CIV.P. 435* and *Rule 438* are applicable to this case. We acknowledge that this remedy, under the two mentioned Rules, should be applied with prudence, caution, and after careful deliberation. We conclude that the issues raised in this appeal have been well settled. The ten per cent damages should be assessed; and, they are assessed. *Nat. Union Fire Ins. Co. v. Garlington,* 697 S.W.2d 778 (Tex.App.—Beaumont 1985, writ ref'd).

We think the points of error and the counterpoint above discussed are properly dispositive of this appeal. We affirm the judgment below with interest, following *Rule 435*, which reads, in part, as follows:

"... The appellate court may, in its discretion, include in the judgment or decree such damages, *not exceeding ten per cent on the amount of the original judgment,* as it may deem proper." (Emphasis ours)

We further find, pursuant to *Rule 435*, that the points of error raised in this unsuccessful appeal have been well settled and that the Appellee's circumstances are such that the statutory interest on the judgment is not adequate. Hence, $7,477.09 is added. *Rule 435.*

AFFIRMED.

BURGESS, J., not participating.

## OPINION ON MOTION FOR REHEARING

BROOKSHIRE, Justice.

It was on April 3, 1986, that we were first shown a copy of a Partial Release of Judgment given by Nancy Hopson to Susan Pruter. The Partial Release of Judgment was dated November 27, 1984. The partial release is merely attached as "EXHIBIT A" to the Motion for Rehearing. We think that it has not been brought before us in conformity with the rules concerning the contents of the Transcript and the Statement of Facts.

Nevertheless, Nancy Hopson, the original plaintiff, acknowledged receipt of $25,000 on November 27, 1984, as a credit against a judgment in the original amount of $74,770.91. This Partial Release of Judgment was filed December 5, 1984, by Billye Minter, District Clerk of Orange County.

Therefore, there is deleted the 10% interest, as damages, on the $25,000. *TEX.R. CIV.P. 435* and *438.* Subject to this one change, our original opinion is reaffirmed and Motion for Rehearing is overruled.

BURGESS, J., not participating.